**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| JACKIE JO NEDIMYER, LEO JOSHUA NEDIMYER, GLORIA WILSON, and TABITHA WILSON, Plaintiffs, | § | |
| vs. | § | CIVIL ACTION NO. 3:22-01454-MGL |
| COOPERSURGICAL, INC., THE COOPER COMPANIES, INC., FEMCARE, LTD, *UK Subsidiary of Utah Medical Products, Inc.*, and UTAH MEDICAL PRODUCTS, INC., Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**
**TRANSFERRING THIS CASE TO THE**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

## I. INTRODUCTION

This matter is before the Court on the question whether this action should be transferred to another federal district and, if so, where. After directing the parties to confer, the Court received competing submissions. Plaintiffs favor transferring the case to the District of Connecticut. Defendants prefer the District of Utah.

The parties have identified sensible considerations on both sides. South Carolina unquestionably bears a meaningful relationship to this controversy. Defendants themselves acknowledge these South Carolina connections. But the issue now before the Court is not whether South Carolina was an impermissible forum. It was not. The question is where this action, in its

present posture and with its present parties, may and should proceed if transferred. The answer is Utah.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs bring product-liability claims arising from allegedly migrating Filshie Clips. This litigation has been pending in this Court since 2022. Discovery has proceeded, including expert discovery, and the action has advanced substantially toward resolution.

The Court previously determined it has personal jurisdiction over all of the defendants and venue in South Carolina is proper. Among other things, the sale and implantation of the Filshie Clips, diagnosis of their alleged migration, and resulting alleged injuries have significant South Carolina connections. Thus, this is not a case in which transfer is required to cure improper venue under 28 U.S.C. § 1406(a). Section 1404(a), rather than § 1406(a), supplies the pertinent framework.

## III. STANDARD OF REVIEW

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The Supreme Court has instructed the phrase "where it might have been brought" is not an invitation to ask whether events occurring after commencement of the action might make a proposed forum suitable. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Court explained the statutory inquiry

concerns the transferee forum's authority over the action independent of post-filing acquiescence designed to facilitate transfer. *Id*. at 344. The threshold requirement therefore precedes the balancing of convenience.

Courts applying § 1404(a) ordinarily consider such matters as the plaintiff's choice of forum, the residence and convenience of the parties, convenience of witnesses, access to evidence, availability of compulsory process, the locus of operative facts, familiarity with governing law, judicial economy, and the broader interests of justice. No single consideration invariably controls. The inquiry is practical and case-specific.

The Fourth Circuit has likewise recognized § 1404(a) is the statutory mechanism governing transfers made "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Carefirst of Maryland, Inc*., 305 F.3d 253, 255–56 (4th Cir. 2002). The inquiry calls for practical judgment, but practical judgment operates within statutory boundaries.

## IV. DISCUSSION AND ANALYSIS

Federal transfer law is designed to facilitate the orderly administration of litigation, not to require courts to remake a lawsuit in order to move it. Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice" to a district "where [the action] might have been brought" or to a district to which all parties have consented. 28 U.S.C. § 1404(a). Those words impose both a threshold limitation and a practical inquiry.

The proposed court must first be a lawful destination for the action; only then does the Court weigh convenience and the interests of justice. Here, those considerations point to the District of Utah.

After the Court directed the parties to address transfer, they were unable to agree upon a destination. Plaintiffs propose Connecticut. They emphasize approximately 200 other Filshie Clip plaintiffs have cases pending in Connecticut state court, CooperSurgical is headquartered there, and counsel are already engaged in Filshie Clip litigation there. Plaintiffs further offer to dismiss Utah Medical Products, Inc. (UTMD) and Femcare, Ltd. if this action is transferred to Connecticut.

Defendants, however, favor Utah. They represent UTMD is incorporated and headquartered there, substantial conduct relevant to the claims occurred there, and witnesses and documentary evidence are located there. Most significantly, Defendants represent all Defendants are subject to personal jurisdiction in Utah and consent to the exercise of jurisdiction there. Thus, unlike Connecticut, Utah can receive the case as it presently exists, without dismissing parties or reconstructing the litigation as a condition of transfer. That difference is decisive.

The first question is whether the proposed transferee district is one in which this action might have been brought. As to Utah, the answer is yes.

UTMD is incorporated and headquartered in Utah. Defendants further represent substantial acts or omissions relevant to Plaintiffs' claims occurred there. Most importantly, all Defendants represent they are subject to personal jurisdiction in Utah and consent to jurisdiction there. The District of Utah therefore presents no apparent personal-jurisdiction obstacle to continuation of this action with its present parties.

Connecticut presents a different problem. Plaintiffs acknowledge their Connecticut proposal requires dismissal of UTMD and Femcare. Their position is straightforward: CooperSurgical is headquartered in Connecticut; numerous similar cases are pending in Connecticut state court; and

Plaintiffs are willing to dismiss UTMD and Femcare so this action may proceed there against CooperSurgical alone.

The proposal has a certain practical appeal, but it reverses the statutory sequence. Section 1404(a) asks first where this action might have been brought. Plaintiffs' proposal effectively asks the Court first to create a different action and then determine where newly configured action could proceed. But, that is not the inquiry Congress prescribed.

The relevant unit is the civil action before the Court, not a hypothetical successor action from which jurisdictionally inconvenient defendants have been excised. The Court need not decide whether plaintiffs could voluntarily dismiss UTMD and Femcare under the Federal Rules in some other procedural setting. Nor does the Court suggest Plaintiffs' proposal is made for an improper purpose. The narrower point is sufficient: dismissal should not become the jurisdictional bridge that makes an otherwise unavailable transferee district available under § 1404(a).

Transfer should follow the facts and the forum, not procedural pruning and post-filing preference. That principle is especially important here.

UTMD and Femcare have participated in this litigation for years. Discovery has been conducted concerning their conduct. Defendants represent expert discovery has likewise focused substantially upon Femcare. To dismiss those parties now—not because Plaintiffs have concluded their claims against them lack merit, but because their continued presence prevents transfer to Plaintiffs' preferred destination—would allow the choice of transferee court to drive the identity of the litigants rather than the other way around.

Section 1404(a) does not require such procedural cartwheels. Utah, by contrast, requires no comparable reconstruction. The parties can arrive in Utah as the parties they are here. The claims

can travel with them. The existing discovery can remain relevant. The action can proceed rather than restart. That consideration weighs heavily in Utah's favor.

The convenience factors require a more nuanced assessment. South Carolina remains convenient to Plaintiffs. That consideration counsel against casually uprooting a mature case. They also explain why the Court does not minimize Plaintiffs' original choice of South Carolina.

But once transfer is contemplated, the comparison is not simply South Carolina against Utah in the abstract. The Court must consider the practical consequences of the proposed destinations.

Utah has substantial connections to Defendants and to the alleged conduct underlying the product-liability claims. UTMD is incorporated and headquartered there. Defendants identify witnesses, documents, and corporate activity located there. And Defendants have expressly accepted Utah as the most convenient alternative forum if the case leaves South Carolina.

Connecticut is unquestionably convenient for CooperSurgical, whose headquarters and principal place of business are there. Plaintiffs also correctly observe defense counsel have substantial experience litigating Filshie Clip cases in Connecticut. But attorney convenience ordinarily carries less significance than the convenience of parties and witnesses, and the existence of similar litigation does not erase the jurisdictional and party-related difficulties discussed above.

On balance, therefore, convenience favors Utah over Connecticut as the transferee forum.

Modern litigation has reduced the importance of the physical location of documents and witnesses. Electronic records can cross state lines in seconds. And, with permission of the Court, long-distance witnesses can testify by ZOOM or some other related technology. Geography therefore carries less force with documentary and testimonial evidence than it once did. It carries some force nonetheless.

Defendants represent documents and witnesses concerning relevant corporate conduct are located in Utah. That assertion is consistent with UTMD's incorporation and headquarters there and with the alleged role of Utah-based activity in the events underlying the claims.

More importantly, Utah permits the existing evidentiary record to remain directed toward the existing parties. Connecticut potentially does not. If UTMD and Femcare are dismissed merely to enable transfer, the relevance and organization of discovery developed over several years may change materially. The Court sees little efficiency in choosing a transferee forum that first requires removing a party around whom substantial discovery has revolved. The access-to-proof factor therefore favors Utah.

No single state owns this controversy. South Carolina has an obvious interest because Plaintiffs reside here and significant medical events and alleged injuries occurred here. Connecticut has an interest because CooperSurgical is headquartered there and numerous Filshie Clip cases are pending in its state courts. Utah has an interest because UTMD is incorporated and headquartered there and because alleged conduct relevant to the claims occurred there.

The dispersed nature of these facts cautions against treating the litigation as a purely local controversy belonging exclusively to any one state. Still, Utah's connection is substantial rather than artificial. It is not a forum selected merely because jurisdiction can technically be established there. One of the principal corporate defendants calls Utah home, relevant corporate activity allegedly occurred there, Defendants identify Utah-based evidence and witnesses, and, as the Court noted earlier, all Defendants represent they are subject to personal jurisdiction in Utah and consent to jurisdiction there. Therefore, this factor therefore supports Utah, although not overwhelmingly.

Ordinarily, a plaintiff's choice of forum receives substantial respect. That principle initially supports South Carolina—not Connecticut. Plaintiffs chose South Carolina when they filed this lawsuit. Their later preference for Connecticut is therefore not entitled to precisely the same deference as their original forum choice. Nor is Connecticut the site of Plaintiffs' alleged injuries or their residence.

The Court appreciates Plaintiffs' explanation. Numerous Filshie Clip actions are proceeding in Connecticut, CooperSurgical is headquartered there, and experienced counsel are already litigating similar issues there. Those are legitimate considerations.

But § 1404(a) protects convenience, not a litigant's evolving preference for consolidation around related litigation. The existence of approximately 200 Filshie Clip actions in Connecticut state court does not itself make the federal District of Connecticut the proper transferee court for this action. Those cases are in a different judicial system and, according to Plaintiffs, involve CooperSurgical rather than the complete group of defendants presently before this Court.

Accordingly, Plaintiffs' present preference for Connecticut receives consideration but is not controlling.

The interests of justice and judicial economy perhaps supply the clearest practical and best reason for choosing Utah. This case is not young. Discovery has closed. Expert work has been performed. Dispositive motions have been filed. The parties have spent years developing the case in its existing configuration. At this stage, a transfer should disturb as little as possible. Utah permits that. Connecticut does not.

The principles of judicial economy definitely counsel the Court to transfer this case to Utah. In earlier proceedings in this case, after Utah Medical and Femcare challenged this Court's personal jurisdiction over them, the Court concluded that it had it.

But, in a similar case concerning similar allegations of the migration of Filshie Clip in another Fourth Circuit district court, that court held otherwise: "The court does not have personal jurisdiction over . . . UTMD, or Femcare. Thus, the court grants these defendants' motion to dismiss for lack of personal jurisdiction." *Watters v. CooperSurgical, Inc.*, 655 F.Supp.3d 376, 384 (E.D.N.C. 2023). It appears the plaintiffs in that case failed to file an appeal. The Court notes at least two of the attorney on that case are also on this one.

The import of that decision is this. Even in light of *Watters*, the Court is convinced it has personal jurisdiction over all the defendants. But, suppose a reviewing court disagrees.

With a transfer to Utah, all defendants agree the district court there has personal jurisdiction over them. Therefore, the aspirational goals of justice and judicial economy overwhelmingly point directly toward transferring this case to Utah.

Transfer to Utah allows all existing parties to proceed in a forum where Defendants represent personal jurisdiction exists over each of them. It requires no antecedent dismissal of parties, no resolution of disputes over costs occasioned by those dismissals, and no reshaping of the case merely to make the destination legally possible.

Connecticut would require additional judicial action before transfer could occur. Plaintiffs propose dismissing UTMD and Femcare; those Defendants oppose that course and raise, among other matters, their interest in taxable costs. Those issues would themselves require adjudication or agreement. And once the parties were removed, questions could arise concerning how discovery developed around them should bear upon the remaining claims.

The federal courts exist to resolve controversies, not to multiply procedural preliminaries. There comes a point when litigation benefits more from forward motion than forum maneuvering. This case has reached that point. Procedure should promote progress, not produce procedural ping-pong. The interest of justice thus weighs strongly in favor of Utah.

Transfer under § 1404(a) changes the courtroom, not ordinarily the substantive law governing a diversity action. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Thus, transfer does not provide a mechanism by which either side may obtain a more favorable body of substantive law merely by changing geography.

That principle further reduces any concern Utah's location will alter the substantive rights the parties brought with them. A transfer under § 1404(a) is intended to improve the administration of litigation, not change its governing rules midway through the contest.

Venue doctrine can become technical because geography, jurisdiction, convenience, and party autonomy intersect within it. But the central point here is simple. South Carolina was a proper forum. The Court does not hold otherwise. Yet, because it has determined this mature litigation should be transferred, the transferee forum should be one capable of receiving the case substantially as it stands. Utah can. Connecticut, on the present record, cannot without first changing the parties to the lawsuit.

Section 1404(a) does not require the Court to dismantle part of an action to manufacture eligibility for the parties' preferred destination. Nor do the interests of justice favor dismissing parties, litigating the consequences of those dismissals, and potentially revisiting years of discovery when another federal forum possesses jurisdiction over the parties and substantial connections to the controversy.

The District of Utah offers continuity. It possesses meaningful connections to the alleged conduct, is home to UTMD, provides access to relevant witnesses and evidence, and—most importantly—can receive the action with its existing parties intact, with no question whatsoever whether the court possesses personal jurisdiction over all the defendants. Plaintiffs' Connecticut proposal, while understandable, asks the Court to alter the litigation before transferring it.

Section 1404(a) points in the opposite direction: determine first where the existing action may lawfully go, and then determine whether convenience and justice favor sending it there. They do.

## VI. CONCLUSION

Accordingly, after considering the convenience of the parties and witnesses, access to sources of proof, the locus of operative facts, the parties' respective forum interests, judicial economy, and the interests of justice, the Court concludes transfer to the United States District Court for the District of Utah is appropriate under 28 U.S.C. § 1404(a).

This case is therefore **TRANSFERRED** to the United States District Court for the District of Utah. The Clerk of Court shall transmit the complete record of this proceeding to that court.

**IT IS SO ORDERED**.

Signed this 30th day of September, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE